UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFTON FRANKLIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 1134 RWS |
| | ) | |
| SAINT LOUIS COUNTY, | ) | |
| MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Clifton Franklin ("Franklin") brings this suit against St. Louis County, Missouri ("The County") and five officers of the St. Louis County Police Department ("SLCPD"), alleging violations of his civil rights under 42 U.S.C. § 1983 as well as several state law claims. The County and Officers Gilyon, Santana, Sondag, Sunderman, and Tiberi move to dismiss all of Franklin's claims under Federal Rule of Civil Procedure 12(b)(6). I will grant the motions in part and deny them in part for the reasons explained below.

## BACKGROUND

The events underlying this suit occurred on August 29, 2015 at St. Louis' Incredible Pizza Company. SLCPD received an anonymous call from that address reporting that a Black woman and a Black man with dreadlocks were fighting outside

1

the restaurant. Four officers, Gilyon, Sondag, Sunderman, and Tiberi, responded to the call.[1] At some point, the officers received an additional anonymous tip reporting that a Black man had entered the restaurant. The man had dreadlocks and was wearing a blue shirt.[2]

When the officers arrived at the restaurant, they did not see anyone fighting outside. Employees at the restaurant's entrance could not confirm that a fight had occurred when asked. Tiberi entered the restaurant alone and approached Franklin, who was eating with his family and celebrating his daughter's birthday. Tiberi asked Franklin if he had been involved in a fight; Franklin said that he had not. Tiberi then "advised" Franklin to come outside with him. Franklin shook his head "no." Tiberi "advised" him once more to stand up and leave the restaurant. This time, Franklin complied and began walking towards the exit, "showing no indication that he was moving quickly or aggressively." Compl. at ¶ 16. Tiberi "put his hands" on Franklin. After Franklin's family began expressing concern for Franklin, Tiberi "put his hands" on Franklin a second time.

Tiberi then attempted to force Franklin's hands behind his back. Franklin turned to face Tiberi because he was "absolutely confused" and "wanted to know for

---

[1] It is not clear when Santana joined the group.

[2] The complaint describes Franklin as a Black man but does not indicate whether he matched the other elements of this man's description.

what he was being arrested."[3] Compl. at ¶ 18. Tiberi either let go of Franklin's hands or Franklin broke free from Tiberi's grasp on his own because Franklin turned to face Tiberi and then "continued towards the exit to clear up the misunderstanding with a conversation." Compl. at ¶ 19. Before he reached the exit, however, Sondag, Santana, and Sunderman entered the premises. They "encircled" Franklin and began "striking [him] and placed him in a choke hold [sic] until they eventually picked him up, threw him to the ground, striking his head into a wall. They then violently flipped him onto his stomach so they could kneel on his back, neck, and head area." Compl. at ¶ 20.

Franklin, struggling for breath, began flailing. The officers attempted to contain him, slamming his head onto the ground and handcuffing him. After he was handcuffed, they flipped him over onto his back. He "continued to struggle to breath[e]," and Gilyon tased him. Franklin then got up and Tiberi led him outside and "slammed" him into the police cruiser before sending him for medical attention. Compl. at ¶ 24. Franklin sustained several injuries as a result of this episode, including penetrating taser wounds to his chest, injuries to his wrists from being

---

[3] This paragraph of the complaint discusses Tiberi and a "Mr. Fletcher." I assume that counsel mistakenly referred to Franklin by the wrong name, as the paragraphs before and after only reference Mr. Franklin.

handcuffed, injures to his neck from the chokehold, and abrasions and headaches from having his head slammed into the wall.

## LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1013 (8th Cir. 2013). The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## ANALYSIS

Franklin has raised claims against the officers in their personal and official capacities. As the County noted in its motion to dismiss, suits against officers in their official capacities are construed as suits against their governmental employers. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). I will dismiss all claims against the officers in their official capacities as redundant. Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010).

### I.      Failure to Train, Discipline, or Supervise

Because Franklin's first count contains allegations that the officers acted in accordance with certain unconstitutional "pervasive customs, practices, and usages" within the SLCPD and that the County failed to adequately train and discipline its officers, it appears that he intended to state a claim under Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658 (1978). I will construe it as such.

A local government may be liable for the unconstitutional actions of its employees under § 1983 "if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations omitted) (quoting Monell, 436 U.S. at 690-91). In order to impose liability, there must be a "direct causal link" between the policy or custom challenged and the constitutional violation alleged. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Franklin has not alleged sufficient facts supporting his claim that his injuries resulted from the officers acting in accordance with any unconstitutional policy or custom. See Snider v. City of Cape Girardeau, 752 F.3d 1149, 1160 (8th Cir. 2014) (plaintiff must show "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation") (citing Johnson v. Douglas Cty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013)). He has not identified any specific official policy or unofficial custom that he believes is unconstitutional. Rather, he provides a long list of vague, conclusory statements in ¶ 36 of the complaint. Even assuming that any of these conclusory allegations could be construed as an attempt to identify specific policies or customs, a plaintiff cannot sustain a Monell claim relying solely on the facts underlying his "own arrest and detention" because "[g]enerally, an isolated incident of alleged police misconduct…cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." Ulrich v. Pope Cty., 715 F.3d 1054, 1061 (8th Cir. 2013) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)). While Franklin alleges "numerous instances of Constitutionally violative conduct by SLCPD officers," he does not offer any facts in support of this statement. The only facts that he has alleged stem from his own interaction with the officers in August 2015.

Franklin has also not alleged facts sufficient to state a claim for failure to train. Id. (plaintiff must plead facts sufficient to show that the municipality's "officer-training practices were inadequate," the municipality "was deliberately indifferent to the rights of others in adopting these training practices, and [the municipality's]

6

failure to train was a result of deliberate and conscious choices it made," and the municipality's "alleged training deficiencies caused [the plaintiff's] constitutional deprivation") (citations omitted). He merely alleges, in two identical conclusory paragraphs, that the County has failed to implement "effective policies related to the use of excessive force." Compl. at ¶ 40-41. These allegations are bare legal conclusions devoid of any supporting factual allegations and are insufficient to state a claim under Rule 12(b)(6). B.A.B., Jr. v. Board of Educ. of City of St. Louis, 698 F.3d 1037, 1040 (8th Cir. 2012).

Franklin's allegations regarding the County's failure to discipline and supervise are even more vague and conclusory than his allegations regarding its failure to train. He does not provide a single factual allegation in support of these claims and thus has not satisfied the 12(b)(6) pleading standard.

As the County argues in its motion to dismiss, this claim is really predicated on a respondeat superior theory of liability, which is not permitted under § 1983. Monell, 436 U.S. at 691. Because Franklin has not stated sufficient facts "to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), I will dismiss this claim.

## II.    Unlawful Stop

In their motions to dismiss, the officers argue that Franklin has not specified which alleged facts constitute the alleged unlawful stop, and that if a stop did occur, Tiberi was the only officer involved. Franklin states that the officers "acting alone and/or together…unreasonably seized [him] for a 'stop' in violation of the Fourth and Fourteenth Amendments." While not a model of clarity, the complaint adequately alleges facts, which taken as true, demonstrate that Franklin was subject to one or more unlawful stops by all of the officers named in the complaint. Under the liberal standard of federal notice pleading, Fed. R. Civ. P. 8, Franklin's complaint is not subject to dismissal on this basis.

Not every interaction with a police officer implicates the Fourth Amendment. United States v. Jones, 269 F.3d 919, 925 (8th Cir. 2001). A seizure in violation of the Fourth Amendment occurs "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). Even when a seizure has occurred, it must be unreasonable to impose liability under § 1983. Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989). The reasonableness of a seizure is "determined by the totality of the circumstances and… judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation." McCoy v. City of Monticello, 342 F.3d 842, 848 (8th Cir. 2003) (citation omitted).

Tiberi argues that his initial encounter with Franklin was consensual because he merely "advised" Franklin to go outside to talk and he approached Franklin alone, without touching him or brandishing his gun. See United States v. Drayton, 536 U.S. 194, 205 (2002) ("[t]he presence of a [police officer's] holstered firearm…is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon."). Construing these facts in the light most favorable to Franklin, it is not clear that a reasonable person in his position would have believed that he was free to leave. Mendenhall, 446 U.S. at 554 ("[e]xamples of circumstances that might indicate a seizure…would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled"). However, a seizure certainly occurred when Tiberi "put his hands on" Franklin and when the other officers arrived, "encircled" him, and forcibly prevented him from leaving the restaurant. California v. Hodari D., 499 U.S. 621, 625-26 (1991) (even brief physical touch can be a seizure because a seizure requires "*either* physical force…*or*, where that is absent, *submission* to the assertion of authority").

Two anonymous tips established the basis for stopping Franklin. The officers did not personally witness any fighting when they arrived at the restaurant and employees at the entrance could not confirm that a fight had occurred earlier. The

complaint does not specify whether Franklin matched the description of the man discussed in the anonymous tips; it only states that both Franklin and the suspect were Black. The officers suggest that the complaint is purposely silent on this issue and ask me to assume that Franklin matched the suspect's description, arguing that I am "not required, even at this preliminary stage, to draw unreasonable inferences" from Franklin's complaint. Brown v. Medtronic, Inc., 628 F.3d 451, 461 (8th Cir. 2010). I do not agree that "the reasonable inference from this omission is that Franklin did match [the suspect's] description," so I will not make this assumption. As a result, it does not appear that the officers independently corroborated the two tips in any way.

The officers cite Navarette v. California in support of their argument that the tips alone provided reasonable suspicion to support stopping Franklin. 572 U.S. 393, 397 (2014) (holding that anonymous tips do not need independent police corroboration "under appropriate circumstances"). They emphasize that the first tip was made via a call to the SLCPD while the caller was presumably at the scene of the fight, watching as it happened. Id. at 400 (tips are considered more reliable if they are made "contemporaneous with the observation of criminal activity," or made via the 911 emergency system because features of the system "provide some safeguards against making false reports"). Neither tip, as described in the complaint, was very detailed. See United States v. LaGrange, 981 F.3d 1119, 1122 (8th Cir.

2020) (because an anonymous tip "contained a detailed description of a weapon allegedly in [the suspect's] possession…[that] entitled the tip to greater weight than a generalized assertion") (citing Illinois v. Gates, 462 U.S. 213, 234 (1983)). The first caller reported that a Black woman and a Black man with dreadlocks were fighting outside. The complaint does not indicate that the caller provided any details about the situation; for example, whether the fight was verbal or physical, or whether either party had been harmed. The second tip was even less detailed, relaying only that the man who was ostensibly involved in the fight had entered the restaurant alone.

Importantly, the second tip also established that the fight was over. By the time they received the second tip, the officers knew that there was no active fight at the restaurant. The existence of ongoing criminal activity was crucial to the holding in Navarette; the United States Supreme Court explicitly stated that even a reliable anonymous tip "will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'" 572 U.S. at 401 (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968) (contrasting the factual situation at hand—the "ongoing crime [of] drunk driving"—with "an isolated episode of past recklessness"). Thus, the officers should have corroborated the two anonymous tips before stopping Franklin. Based on the allegations in the complaint, there was no reasonable

suspicion to support stopping Franklin, and it appears that he was only stopped because of his race.

The officers argue that even if the stop was not reasonable, I must dismiss this claim due to the doctrine of qualified immunity. "An official is entitled to qualified immunity against a § 1983 action unless (1) the facts, construed in the light most favorable to the party seeking damages, establish a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." McKenney v Harrison, 635 F.3d 354, 358 (8th Cir. 2011) (citation omitted). A right is considered clearly established if it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002). Prior case law must demonstrate that the statutory or constitutional question at issue is "beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Based on the facts that Franklin alleged, it appears that he was stopped on account of his race, with nothing more to support the stop. This is impermissible and was settled law well before 2015. See, e.g., United States v. Clay, 640 F.2d 157, 159 (8th Cir. 1981) ("Police cannot have grounds for suspicion based solely on the race of the suspect"). While discovery may reveal that Franklin did in fact match the description of the suspect, I cannot draw that conclusion based on the complaint, and the qualified immunity claim must therefore be denied at this stage of the proceedings.

### III.   Unlawful Arrest

The officers also argue that Franklin has not adequately pled an unlawful arrest. Franklin states that the officers "acting alone and/or together…acted without probable cause and seized [him] for arrest in violation of the Fourth and Fourteenth Amendments." As with the previous claim, the officers argue that Tiberi was the only officer who potentially effected an unlawful arrest and that this claim should be dismissed against the other officers. Construing the facts in the light most favorable to Franklin, the complaint adequately alleges that he was subjected to one or more unlawful arrests by all officers named in the complaint, including not only Tiberi but also the other officers who surrounded him and used force to prevent him from leaving the restaurant. The motion to dismiss this claim will be denied on that basis.

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011) (citing Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)). Probable cause exists "when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Id. (citation omitted). Arguable probable cause exists when an officer makes an arrest "under the mistaken belief that they

13

have probable cause to do so, provided that the mistake is objectively reasonable." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008).

An uncorroborated anonymous tip does not constitute sufficient probable cause for an arrest. United States v. Roberts, 787 F.3d 1204, 1210-11 (8th Cir. 2015). Since the officers did not independently corroborate the details of the two tips when they arrived at the restaurant, as previously discussed, the complaint adequately supports the inference that they did not have probable cause to arrest Franklin for fighting. As a result, when Tiberi first "put his hands on" Franklin, that arrest was unlawful.

Tiberi argues that he did not make an arrest when he initially touched Franklin. In the alternative, he argues that if he did arrest Franklin, it was not unlawful because an individual's "response to even an invalid arrest or Terry stop may constitute independent grounds for arrest." United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995). In support of this argument, he points to United States v. Collins, 200 F.3d 1196, 1198 (8th Cir. 2000), in which the Eighth Circuit held that the plaintiff would have provided a reasonable officer with probable cause for resisting arrest under Missouri law by "jerking, and turning away from [the officer], jerking his arm free of [the officer's] grasp," and "taking a couple of steps [away]."

The complaint states that Franklin "turned to face" Tiberi as Tiberi attempted to put Franklin's hands behind his back. Compl. at ¶ 18. Then, after freeing himself from Tiberi's grasp, Franklin began walking towards the exit in what he claims was an attempt to comply with Tiberi's earlier requests to leave the building. These facts are different from those at issue in <u>Collins</u>, as it was not objectively reasonable for an officer in Tiberi's position to believe that Franklin was fleeing and thus attempting to avoid arrest, especially since Tiberi had twice instructed Franklin to go outside. As a result, I cannot decide as a matter of law that there was arguable probable cause to make the arrest and therefore Tiberi and the other officers are not entitled to qualified immunity. <u>Ehlers v. City of Rapid City</u>, 846 F.3d 1002, 1009-10 (8th Cir. 2017).

## IV.   Excessive Force

Courts evaluate an officer's use of force "from the perspective of a reasonable officer present at the scene." <u>Carpenter v. Gage</u>, 686 F.3d 644, 649 (8th Cir. 2012). The amount of force used must be "objectively reasonable under the particular circumstances." <u>Greiner v. City of Champlin</u>, 27 F.3d 1346, 1354 (8th Cir. 1994). Several factors influence whether force was reasonable, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989) (citation omitted).

Police can use force to prevent a suspect from fleeing the scene. <u>Greiner</u>, 27 F.3d at 1355. Franklin argues that he was not attempting to flee when he "turned to face" Tiberi, got free of the officer's grasp, and began walking towards the exit. As previously discussed, it is unclear from the facts alleged that Franklin's actions could have been interpreted as an attempt to flee. Franklin states that he was merely walking towards the exit of the restaurant, "not moving quickly or aggressively," when the officers began using force against him.

Viewing the facts in the complaint in the light most favorable to Franklin, as I must, I find that he has stated a claim for excessive force against the officers. In their motions to dismiss, the officers contend that their use of force against Franklin was justified because he "flailed throughout the course of his arrest" and "a reasonable officer can conclude that flailing constitutes unlawful resistance to justify a use of force." But this is not an accurate description of the facts that Franklin alleged. The complaint states that he "began flailing as he gasped for breath" ***after*** the officers had already struck him, put him in the chokehold, picked him up and threw him on the ground, hit his head into the wall, flipped him onto his stomach, and knelt on him. This fact makes the instant case distinguishable from the cases that the officers cited in support, including <u>Turner v. Tillman</u>, 2020 WL 2198933, at *6 (E.D. Mo. May 6, 2020) (plaintiff's flailing during the officers' attempt to subdue him "posed a serious threat" to the officers' safety; one of the officers "tried

repeatedly to get [the suspect] to comply without force, [but] when given the opportunity to comply without force, [the suspect] instead attacked [the officers]") and McManemy v. Tierney, 970 F.3d 1034, 1037 (8th Cir. 2020)  (plaintiff flailed as officers attempted to handcuff him and they were only able to restrain him "at the tail end of a 'tumultuous' struggle") (quoting Rudley v. Little Rock Police Dep't, 935 F.3d 651, 654 (8th Cir. 2019)). According to the complaint, there was no struggle or resistance that prompted the officers' use of force. Franklin was complying with instructions he had been given, was not resisting arrest or fleeing the scene, and did not pose an immediate threat to the safety of the officers or anyone in the vicinity when the officers began using force against him. Additionally, as discussed previously, it does not appear, from the allegations in the complaint, that the officers had reasonable suspicion to even stop, let alone probable cause to arrest, Franklin.

Furthermore, "when a person is subdued and restrained with handcuffs, 'a gratuitous and completely unnecessary act of violence' is unreasonable and violates the Fourth Amendment." Blazek v. City of Iowa City, 761 F.3d 920, 925 (8th Cir. 2014) (quoting Henderson v. Munn, 439 F.3d 497, 503 (8th Cir. 2006)). Franklin had been forced to the ground and was laying on his back, with his hands cuffed underneath him, when Gilyon used the taser on him. It is not clear that Franklin was flailing after he was handcuffed; the complaint states that he "continued to struggle

17

to breath[e] until he was flipped over" after the cuffs were placed on his wrists. It is also not clear, at this stage in the case, that this "struggle" for breath could be construed as an attempt to resist.

The allegations in the complaint are also sufficient to support Franklin's claim against Tiberi, Santana, Sondag, and Sunderman for failing to protect Franklin from Gilyon's use of the taser. Compl. at ¶ 67(d). "[A]n officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009). The complaint indicates that Tiberi, Santana, Sondag, and Sunderman stood by as Gilyon tased Franklin and did not intervene to stop it. As a result, I find that Franklin has also stated a claim for failure to intervene to prevent the unconstitutional use of excessive force.

The officers argue that even if the force used against Franklin was excessive and not reasonable under the circumstances, I must dismiss this claim because they are entitled to qualified immunity. While the facts that Franklin has alleged are not perfectly analogous to facts from any previous case, exact factual similarity is not necessary "to overcome qualified immunity, as long as the unlawfulness was apparent in light of preexisting law." Blazek, 761 F.3d at 926 (citation omitted). Case law prior to August 2015 established that officers were not permitted to use this degree of force against a suspect who does not present any threat of violence or

attempt to resist arrest. See Small v. McCrystal, 708 F.3d 997, 1005 (8th Cir. 2013) (unreasonable for an officer "to use more than de minimis force" against an intoxicated plaintiff who did not pose an immediate threat to anyone's safety, had not been told that he was under arrest, was not in flight or resisting arrest, and was in fact walking away from the scene when the officer "tackl[ed] him from behind without warning"); Shannon v. Koehler, 616 F.3d 855, 862-63 (8th Cir. 2010) (unreasonable for an officer to take down and handcuff the plaintiff, who was intoxicated and had assaulted someone during a bar fight, because he was not suspected of committing a serious crime, was not threatening anyone or resisting arrest, and did not pose a threat to the officers' safety); Brown v. City of Golden Valley, 574 F.3d 491, 497 (8th Cir. 2009) (force not reasonable because the plaintiff "posed at most a minimal safety threat," "was not actively resisting arrest or attempting to flee," gave no indication that she would potentially hurt the officers, "did not threaten the officers, verbally or physically," and the circumstances were not "tense, uncertain, and rapidly evolving") (quoting Graham, 490 U.S. at 397)).

Prior to August 2015, only one Eighth Circuit case, LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013), had addressed the use of a taser on a handcuffed individual. In LaCross, the court affirmed the district court's finding that an officer who tased a handcuffed suspect did not act unreasonably because the suspect had "kicked at the [police] car's windows, spat, and attempted to bite [the officer]." In

finding that the officer was not entitled to qualified immunity, the court focused on the fact that in 2006, case law had not clearly established that the use of a taser causing *de minimis* injury could violate the Fourth Amendment. <u>See</u> <u>Hollingsworth v. City of St. Ann</u>, 800 F.3d 985, 990-91 (8th Cir. 2015) (explaining <u>LaCross</u> reasoning). That is not at issue here. Furthermore, the Eighth Circuit recently cited <u>LaCross</u> as precedent establishing that "the use of tasers on detainees in handcuffs [is permitted] *in appropriate circumstances*." <u>See</u> <u>Franklin v. Franklin Cty.</u>, 956 F.3d 1060, 1062 (8th Cir. 2020) (emphasis added).

In addition to <u>LaCross</u>, the Eighth Circuit had decided several cases involving other exercises of force on handcuffed individuals before 2015. These cases further demonstrate that the law at that time permitted police to use force against handcuffed suspects only when such suspects resisted or were noncompliant. <u>See</u> <u>Blazek</u>, 761 F.3d at 925-26 (officers who "jerked" the plaintiff from the floor to his bed after he was "handcuffed and under control" were not entitled to qualified immunity because the suspect was "not resisting and posed no threat to the officers"); <u>Krout v. Goemmer</u>, 583 F.3d 557, 566 (8th Cir. 2009) (objectively unreasonable for officers to kick and punch a suspect who was handcuffed, on the ground, and not resisting); <u>Henderson</u>, 439 F.3d at 502-03 (unreasonable for an officer to use pepper spray on a suspect who was handcuffed, subdued, and lying face-down on the ground because "in this compromising position, [plaintiff] posed little or no threat to the safety of

the officers or others," despite the fact that he may have resisted arrest before he was cuffed).

Thus, the officers are not entitled to qualified immunity on Franklin's excessive force claims at this stage of the proceedings.

## V.     Conspiracy Claims

To state a claim for conspiracy under § 1983, a plaintiff must show that "(1) [the police] conspired to deprive [him] of a constitutional or federal right; (2) 'at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy,' and (3) [plaintiff] was injured by that overt act." S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Com'rs, 725 F.3d 843, 850 (8th Cir. 2013) (citation omitted). Franklin has alleged that the officers "conspired with each other to violate [Franklin's] Civil Rights," and that the overt acts taken in furtherance of the conspiracy consist of assault and battery, including the deployment of the taser; failing to warn Franklin that he was going to be tased; allowing him to be tased when it was not necessary; and creating and filing false incident reports. These acts resulted in "numerous serious injuries," including sustained penetrating taser wounds to Franklin's chest.

Case law does not support Franklin's argument that an officer must warn a suspect that he is about to be tased. In fact, the Eighth Circuit has repeatedly

"eschewed a bright-line rule requiring officers to issue a warning before deploying a taser against a suspect." Boudoin v. Harsson, 962 F.3d 1034, 1043 (8th Cir. 2020) (citing Brown, 574 F.3d at 499). Because there is no constitutional violation, this part of the conspiracy claim must be dismissed.

Additionally, Franklin has not pled sufficient facts in support of his claim that the officers conspired to file false reports, which can be a violation of § 1983. S.L., 725 F.3d at 853. Due to the clandestine nature of most conspiracies, a plaintiff is not required "to provide direct evidence of a conspiratorial agreement" in order to survive a motion to dismiss. Smith v. Bacon, 699 F.2d 434, 437 (8th Cir. 1983). However, a plaintiff must still allege "specific facts tending to show a 'meeting of the minds' among the alleged conspirators." Murray v. Lene, 595 F.3d 868, 870 (8th Cir. 2010) (citations omitted). The complaint does not contain any allegations that a meeting of the minds occurred. It also does not contain any allegations relating to overt acts in furtherance of the conspiracy to file false reports, beyond the conclusory allegation that the officers "intentionally created and agreed to file incident reports" containing false information. Furthermore, Franklin has not alleged that he suffered an injury as a result of this conspiracy, which is also fatal to his claim.

Franklin's allegations related to the officers conspiring to use excessive force and failing to protect him from being tased are more detailed; as previously stated, he has adequately alleged constitutional violations in support of those claims. The

officers argue that they are entitled to qualified immunity. Their arguments on this point are general, and none of their motions to dismiss discuss the intracorporate conspiracy doctrine. I will address the issue because it is relevant to their claim of qualified immunity.

The intracorporate conspiracy doctrine derives from the nature of conspiracy, which requires an agreement between or among two or more separate persons. Ziglar v. Abbasi, 137 S.Ct. 1843, 1867 (2017). When two agents of the same legal entity make an agreement in the course of their official duties, their acts are attributed to their principal as a practical and legal matter. Thus, it follows that there has not been an agreement between two or more separate people and conspiracy liability cannot be imposed. Id. at 1867-68. The Eighth Circuit has already applied the intracorporate conspiracy doctrine to claims brought under 42 U.S.C. § 1985. L.L. Nelson Enter., Inc. v. Cty. of St. Louis, Mo., 673 F.3d 799, 812 (8th Cir. 2012). Other circuits have also extended the doctrine to § 1983 claims. See Jackson v. City of Cleveland, 925 F.3d 793, 819-20 (6th Cir. 2019); Grider v. City of Auburn, Ala, 618 F.3d 1240, 1261-62 (11th Cir. 2010). Judges in this district have declined to extend the doctrine to § 1983 cases in the absence of clear guidance from the Eighth Circuit. Laird v. City of St. Louis, Mo., 2019 WL 2647273, at *5 (E.D. Mo. June 27, 2019); Aldridge v. City of St. Louis, Mo., 2019 WL 1695982, at *8 (E.D. Mo. Apr. 17, 2019); Golden v. Moutray, 2018 WL 1784395, at *4 (E.D. Mo. Apr. 13, 2018); Powers v. City of

Ferguson, 229 F.Supp.3d 894, 906 (E.D. Mo. 2017); Anzaldua v. Ne. Ambulance and Fire Protection Dist., 2014 WL 466234, at *8 (E.D. Mo. Feb. 5, 2014).

In Abbasi, the Supreme Court held that officials were entitled to qualified immunity because the law regarding the applicability of the intracorporate conspiracy doctrine to § 1985(3) claims was not well established. According to the Court, "when the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability." 137 S.Ct. at 1868. As in Abbasi, the question here is whether the officers could reasonably have known that any agreements they entered into with one another could subject them to conspiracy liability. Given the uncertainty regarding the applicability of the intracorporate conspiracy doctrine in § 1983 cases, the officers could not have reasonably known in 2015 that their actions might expose them to liability for a conspiracy. Therefore, the officers are entitled to qualified immunity as to Franklin's conspiracy claims.

## VI.   State Law Claims

The officers contend that Franklin's state law claims of assault, battery, and false imprisonment are all time-barred under Mo. Rev. Stat. § 516.130(1), which provides that any "action against a sheriff, coroner or other officer, upon a liability incurred by the doing of any act in his official capacity and in virtue of his office, or by the omission of an official duty" must be brought within three years. Police

officers are considered "other officers" within the meaning of the statute. Dilley v. Valentine, 401 S.W.3d 544, 551-52 (Mo. Ct. App. 2013). An officer acts in an official capacity when he or she "is acting within the scope of what he or she is employed to do rather than being engaged in a personal frolic." Id. at 553. If a plaintiff brings state law tort claims against a police officer in his or her individual capacity, then a different, two-year statute of limitations applies. Mo. Rev. Stat. § 516.140.

Franklin's claims are time-barred under both statutes of limitations because he filed his complaint almost five years after the incident occurred. Accordingly, his assault, battery, and false imprisonment claims are dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motions to dismiss, [25], [27], and [31] are **GRANTED** as to Counts I, V, VI, VII, and VIII and **DENIED** as to Counts II, III, and IV.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2021.